# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JOSEPH M. BENSON,**
**Plaintiff Below, Petitioner**

**v.) No. 24-ICA-247**      (Cir. Ct. Hampshire Cnty. Case No. CC-14-2023-P-12)

**PAMELA BENSON AND EDWARD BENSON, AS EXECUTRIX/EXECUTOR OF THE ESTATE OF AUGUST FRANK BENSON, JR., and BANK OF ROMNEY, Defendants Below, Respondents**

**FILED**
**April 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Joseph M. Benson ("Joseph") appeals the May 17, 2024, order from the Circuit Court of Hampshire County granting summary judgment to Respondents Pamela Benson ("Pamela") and Bank of Romney and dismissing the case.[1] Respondents Pamela Benson and Bank of Romney each filed summary responses in support of the circuit court's order.[2] Respondent Edward Benson ("Edward") did not participate in this appeal. Joseph did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Joseph is the grandson of August Frank Benson, Jr. ("Decedent") and the adult child of Pamela. Pamela and Edward are the biological children of Decedent. This case centers on a petition filed by Joseph seeking to set aside a will and deed executed by Decedent.

---

[1] Also attached to Joseph's notice of appeal is an order dated June 5, 2024, which denied his motion to alter, amend, or vacate the circuit court's May 17, 2024, order. However, there is no assignment of error raised to challenge that decision. As such, we deem any argument in that respect waived.

[2] Joseph is represented by Grant M. Sherman, Esq., Pamela is represented by Brian J. Vance, Esq., and Bank of Romney is represented by G. Isaac Sponaugle III, Esq.

1

According to the record, the facts of this case are as follows. On April 20, 2010, Decedent executed a notarized document wherein he declared: "I August Frank Benson, Jr. transfer all Winchester Firearms and manufactured items in my possession to my grandson Joseph Michael Benson for the sum of one dollar." ("2010 Document").

During his lifetime, Decedent executed two wills, each prepared by a different attorney. The first will was prepared by attorney V. Alan Riley and was executed by Decedent on February 9, 2017 ("2017 Will"). Under the 2017 Will, Decedent made several devises. Relevant here, Decedent devised Pamela and Edward one dollar each and left the residue and remainder of his estate to his wife. The 2017 Will provided that in the event that Decedent's wife predeceased him, her share would pass to Joseph. Decedent's wife passed away on January 26, 2020. Shortly thereafter, Pamela moved into Decedent's home to care for him due to his advanced age.

On February 3, 2020, Decedent met with attorney Jonathan G. Brill ("Attorney Brill") for the purposes of drafting a new will ("2020 Will"). On that day, Attorney Brill consulted with Decedent for approximately forty-five to sixty minutes. Decedent returned to Attorney Brill's office on March 3, 2020, where they met for about thirty minutes to review the 2020 Will before Decedent executed the same. The 2020 Will expressly revoked the 2017 Will, does not mention Joseph, and divides Decedent's entire estate between Pamela and Edward. The 2020 Will also contains language which bequeaths all Decedent's firearms to Edward.

Also, in December of 2020, Decedent contacted Bank of Romney for the purpose of refinancing his mortgage debt with Quicken Loans. The loan, a "no cash out" refinance, was closed on January 15, 2021. On January 21, 2021, Decedent executed the "2021 Deed," which conveyed his real property to Pamela and reserved a life estate for himself. According to the record, attorney William C. Keaton ("Attorney Keaton") was retained by Bank of Romney to conduct a title examination for the mortgage refinancing, and he drafted the 2021 Deed. Decedent died on August 7, 2022, at eighty-five years of age.

On February 7, 2023, Joseph filed his initial petition in circuit court challenging the 2020 Will and 2021 Deed. An amended petition was filed on November 6, 2023.[3] The amended petition alleges that at the time the 2020 Will and 2021 Deed were executed, Decedent was suffering from diminished capacity and had been receiving medical treatment for dementia and Alzheimer's disease since 2019. It further alleges that following the death of Decedent's wife, Pamela and Edward exerted undue influence upon Decedent to execute those documents and refinance his mortgage all in an effort to prevent Joseph from benefiting from the 2017 Will.

---

[3] The amended petition was filed to add Bank of Romney as a nominal defendant. It raised no new allegations against Pamela or Edward.

2

Pamela's counsel filed an answer on her behalf. Edward was self-represented and filed an answer, requesting the case against him be dismissed. Bank of Romney filed a motion to dismiss. On March 11, 2024, a hearing was held on Bank of Romney's motion to dismiss. At the hearing, the circuit court informed the parties that it was converting the motion to dismiss to a motion for summary judgment, granted the parties leave to file additional motions, and indicated that a final hearing on all filed motions would be held on April 15, 2024. Pamela filed a motion for summary judgment on March 19, 2024, which included affidavits from Attorney Brill and Attorney Keaton. Following the motions hearing, the circuit court took the matter under advisement.

On May 17, 2024, the circuit court entered the present order on appeal. The circuit court noted that in order to impeach a will, claims of undue influence must be established by more than mere suspicion and conjecture. *See* Syl. Pt. 5, *Frye v. Norton*, 148 W. Va. 500, 135 S.E.2d 603 (1964). Similarly, the circuit court recognized that there is a rebuttable presumption that a decedent, even one of advanced age, is competent at the time he executes a deed, will, contract, or other instrument, and that a decedent's mental capacity at the time of execution is the controlling factor. *See, e.g.*, Syl. Pts. 1 and 2, *Carrigan v. Davis*, 84 W. Va. 473, 100 S.E. 91 (1919); Syl. Pts. 1 to 4, *Cyrus v. Tharp*, 147 W. Va. 110, 126 S.E.2d 31 (1962); *Montgomery v. Montgomery*, 147 W. Va. 449, 455, 128 S.E.2d 480, 484 (1962) (citations omitted) (reiterating that a decedent's mental capacity at the time an instrument is executed is the determining factor in any case challenging decedent's capacity to make or execute the same); W. Va. Code § 2-3-1 (1974).

Considering these principles, the circuit court determined that Joseph had not established genuine issues of material fact in this case. Specifically, it was determined that while Joseph had produced copies of some medical records indicating Decedent's Alzheimer's diagnosis, those records were not close in time to Decedent's execution of the 2020 Will or 2021 Deed, and he did not produce any affidavits from medical providers to support his contention of diminished capacity, despite previously indicating he could provide them. The circuit court also noted that despite Joseph indicating that he could produce witnesses to testify that they had witnessed Decedent exhibiting behaviors indicative of diminished capacity, no such witnesses or other corroborating evidence had been procured or disclosed during discovery.

Instead, the circuit court noted that Attorney Brill had provided an affidavit wherein he attested that he had met with Decedent at his law office privately on two occasions to discuss the drafting of the 2020 Will. Attorney Brill indicated that Decedent was able to easily recall the natural objects of his bounty, his heirs, and how he desired to dispose of his property upon his death. Further, prior to executing the 2020 Will, Decedent reviewed the document and communicated that it accurately reflected his desires. Attorney Brill expressed no concerns regarding Decedent's mental acuity and believed he fully understood the nature of his actions.

The circuit court also discussed the affidavit of Attorney Keaton, in which Attorney Keaton stated that he did not find any public record indicating that Decedent had been declared legally incompetent. He also attested that based upon his interactions with Decedent, there were no indications of cognitive impairment or duress, and that he believed Decedent understood the nature of the executing documents, as well as his rights as Attorney Keaton had explained them to him. The circuit court found that both affidavits were entitled to considerable weight. *See* Syl. Pt. 3, *Floyd v. Floyd*, 148 W. Va. 183, 133 S.E.2d 726 (1963).

The circuit court was also unpersuaded by Joseph's argument that the 2010 Document invalidated the 2020 Will's devise of Decedent's firearms to Edward because the firearms had already been disposed of, and the inclusion of firearms in the 2020 Will was further evidence of Decedent's diminished capacity. On this issue, the circuit court found that other than identifying the firearm manufacturer, the 2010 Document did not particularly describe the firearms in Decedent's possession in 2010, and that the language of the 2020 Will did not readily identify the firearms in Decedent's possession when the 2020 Will was executed. Thus, the 2010 Document did not invalidate the 2020 Will.

Ultimately, the circuit court concluded that Joseph had failed to produce sufficient evidence to overcome summary judgment. It granted Pamela's and Bank of Romney's motions, finding that Joseph had not demonstrated undue influence, the 2020 Will and 2021 Deed were valid legal instruments, and that Decedent did not lack mental capacity at the time he executed the same. The circuit court made no determinations regarding the claims against Edward; however, the order canceled the case's upcoming bench trial and directed that the case be closed, finding that there was "[n]othing further remaining to be done[.]"[4] This appeal followed.

In West Virginia, it is well established that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting a de novo review, this Court applies the same standard for granting summary judgment that a circuit court must apply, and that standard states, "[a]

---

[4] From our review of the record, it appears that aside from filing his answer, Edward was seemingly absent from all further aspects of the litigation. The order on appeal grants summary judgment and dismisses the case in its entirety. Notably, while that order makes no ruling as to the claims against Edward, there is no argument on appeal as to the claims against Edward or that the claims against him, which are identical to those raised against Pamela, are pending. Instead, Joseph only mentions the claims against Edward in passing in an attempt to support his argument on appeal. However, considering the language used by the circuit court, it is presumed that its ruling was also intended to dispose of the claims against Edward. Furthermore, because no direct assignment of error was raised regarding the claims against Edward or to challenge the sufficiency of the circuit court's order, we deem any challenge to the dismissal of the claims against Edward to be waived.

motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *United Bank, Inc. v. Blosser*, 218 W. Va. 378, 383, 624 S.E.2d 815, 820 (2005) (quoting Syl. Pt. 2, *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756). "Summary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

On appeal, Joseph's only assignment of error is that the circuit court's entry of summary judgment was inappropriate because there are genuine issues of material fact. Specifically, he asserts that Decedent's medical records and the 2020 Will's contradiction of the 2010 Document and 2017 Will create an issue of fact regarding the validity of the 2020 Will and 2021 Deed. We disagree with this contention.

As our Supreme Court of Appeals has stated:

> Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Syl. Pt. 5, *Jividen v. Law*, 194 W. Va. 705, 461 S.E.2d 451 (1995). Specifically,

> the party opposing summary judgment must satisfy the burden of proof by offering more than a mere "scintilla of evidence" and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. The evidence illustrating the factual controversy cannot be conjectural or problematic. It must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve. The evidence must contradict the showing of the moving party by pointing to specific facts demonstrating that, indeed, there is a "trialworthy" issue. A "trialworthy" issue requires not only a "genuine" issue but also an issue that involves a "material" fact.

*Williams*, 194 W. Va. at 60, 459 S.E.2d at 337 (citations omitted).

After reviewing this evidence in a light most favorable to Joseph, we conclude that he failed to establish the existence of a trialworthy issue. Although Joseph only advanced

a single assignment of error, he addresses three separate rulings, which we will address in turn.

First, Joseph argues that the circuit court erred in granting summary judgment on his claim that Decedent was subject to undue influence at the time he executed the 2020 Will. The Supreme Court of Appeals has held that "[u]ndue influence, to invalidate a will, must be such influence as destroys the free agency of the testator and, in legal effect, amounts to force and coercion[.]" Syl. Pt. 14, in part, *Ritz v. Kingdon*, 139 W. Va. 189, 79 S.E.2d 123 (1953). Further, *Frye v. Norton* states, "[i]n an action to impeach a will the burden of proving undue influence is upon the party who alleges it and mere suspicion, conjecture, possibility or guess that undue influence has been exercised is not sufficient to support a verdict which impeaches the will upon that ground." Syl. Pt. 5, *Frye v. Norton*, 148 W. Va. 500, 135 S.E.2d 603 (1964). In support of this claim on appeal, Joseph points to the circumstances of Pamela moving in with Decedent, that the subsequent 2020 Will contradicted the 2017 Will, and his interpretation that the 2020 Will contradicted the 2010 Document in the disposition of firearms. We find that Joseph's argument that these facts demonstrate undue influence is nothing more than speculation and conjecture, and the circuit court did not err in granting summary judgment on this claim.

Next, Joseph contends that the circuit court erred in granting summary judgment on his claim that Decedent lacked capacity to execute the 2020 Will. The Supreme Court of Appeals of West Virginia has held that testamentary capacity merely requires one "to understand the nature and consequences of his act, the property to be disposed of, and the objects of his bounty." Syl. Pt. 1, in part, *Payne v. Payne*, 97 W. Va. 627, 125 S.E. 818 (1924). Further, "[g]reater mental capacity is required to execute a deed or contract than a will." Syl. Pt. 4, *Prichard v. Prichard*, 135 W. Va. 767, 65 S.E.2d 65 (1951). Additionally, "[t]he time to be considered in determining the capacity of the testator to make a will is the time at which the will was executed." Syl. Pt. 3, *Frye v. Norton*, 148 W. Va. 500, 135 S.E.2d 603 (1964).

As discussed in detail above, Pamela introduced the affidavit of Attorney Brill in which he attested that at the February 3, 2020, meeting to discuss the will and the March 3, 2020, meeting to execute the will, Decedent understood what he was doing in executing the 2020 Will, the extent of his property, and to whom he wished to distribute his property. "The testimony of an attending physician or the lawyer who drafted the will is . . . entitled to great weight on the question of mental capacity." *Floyd v. Floyd*, 148 W. Va. 183, 196-97, 133 S.E.2d 726, 734 (1963). *Floyd* further says, "[a]lthough such evidence in favor of a will is not conclusive, it must be clearly outweighed by other evidence in order to support a verdict against the validity of the will." *Id.* at 184, 133 S.E.2d at 728, Syl. Pt. 3. In his response to Pamela's motion for summary judgment, Joseph responded to this evidence by citing generally to Decedent's medical records for the proposition that he was diagnosed with Alzheimer's and had some memory issues during the relevant period. However, Joseph did not introduce affidavits from any medical providers demonstrating that

6

Decedent lacked testamentary capacity at the time that any of these records were created. Moreover, Joseph did not identify any evidence in the record that Decedent lacked capacity at the time the 2020 Will was executed. Accordingly, the circuit court did not err in granting summary judgment on this issue.

Finally, Joseph argues that the circuit court erred in granting summary judgment on his claim that Decedent lacked mental capacity to execute the 2021 Deed. In *Van Heyde v. Miller*, the Supreme Court of Appeals explained "[a] person is mentally competent to make a conveyance of land if he knows the nature, character and effect of his deed." Syl. Pt. 4, *Van Heyde v. Miller*, 239 W. Va. 56, 799 S.E.2d 133 (2017) (quoting Syl. Pt. 1, *Cyrus v. Tharp*, 147 W.Va. 110, 126 S.E.2d 31 (1962)). Moreover,

> The presumption of law is in favor of the sanity and mental capacity of a grantor, and the person attacking his conveyance on the ground of his incapacity, or the exertion of undue influence over him in inducing him to make the deed, bears the burden of proof. One who charges fraud and undue influence must prove it.

*Van Heyde*, 239 W. Va. 56, 799 S.E.2d 133, Syl. Pt. 5 (quoting Syl. Pt. 2, *Cyrus v. Tharp*, 147 W.Va. 110, 126 S.E.2d 31 (1962)).

As discussed above, Pamela introduced the affidavit of Attorney Keaton attesting that Decedent did not show indications of cognitive impairment or duress at the time he executed the 2021 Deed, and that he believed Decedent understood the nature of the 2021 Deed and his rights. Joseph did not identify evidence in his response to Pamela's motion for summary judgment below or in his brief on appeal to rebut the presumption that Decedent had the necessary capacity at the time of the 2021 Deed or to contradict Attorney Keaton's affidavit. Therefore, the circuit court did not err in granting summary judgment on this issue.

Accordingly, we affirm the circuit court's May 17, 2024, order.

Affirmed.

**ISSUED:** April 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

7